# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUREN HARVIN, | : | Civil No. 3:17-cv-2254 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| SUPERINTENDENT LAWRENCE MAHALLY, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Lauren Harvin ("Harvin"), an inmate confined at the State Correctional Institution, Dallas, Pennsylvania ("SCI-Dallas"), commenced this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Harvin alleges that he is a non-smoker who is exposed to high levels of second hand smoke at SCI-Dallas. (*Id.*). Named as Defendants are Superintendent Lawrence Mahally, Deputy Superintendent Zakarauska, Deputy Superintendent Demming, Unit Manager Verbyla, Goyne, and White. (*Id.*).

Presently pending before the Court is Defendants' motion (Doc. 16) to dismiss pursuant to Federal Rule of Civil Procedure 12(b).[1] For the reasons set forth below,

---

[1] Defendants contend, *inter alia*, that Harvin failed to properly exhaust the claims against them. Because Defendants rely on documents outside the pleadings to support this argument, the Court will address the exhaustion argument under the summary judgment standard. Furthermore, by Order dated January 3, 2019, the Court placed the parties on notice that it may consider exhaustion in its role as fact finder under *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013). (Doc. 23) (citing *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018)). The Order also afforded the parties the opportunity to supplement the record with any additional evidence relevant to exhaustion of administrative remedies. (*Id.*).

Defendants' motion will be granted in part and denied in part.

## I. Allegations of the Complaint

Harvin is housed at the State Correctional Institution at Dallas. (Doc. 1). Harvin avers that he is a non-smoker who is exposed to high levels of second hand smoke at SCI-Dallas. (*Id.* at p. 5). As a result of this exposure, Harvin alleges that he developed bronchitis. (*Id.*).

Harvin alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments. (*Id.* at p. 6). He seeks injunctive relief, as well as compensatory and punitive damages. (*Id.* at p. 7).

## II. Motion for Summary Judgment

### A. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving

party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not

3

lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

B.   **Statement of Undisputed Facts**

The Department of Corrections has a formal policy that allows inmates to bring concerns and complaints to the attention of prison officials. (Doc. 24, Statement of Material Facts, ¶ 1; Doc. 24-1, p. 7, Declaration of Dorina Varner ("Varner Decl."), ¶ 5; Doc. 25, Counterstatement of Material Facts, ¶ 1). The inmate grievance policy and procedures are set forth in DC-ADM 804. (Doc. 24 ¶ 2; Doc. 25 ¶ 2).

On August 7, 2017, Harvin filed Grievance Number 690441, alleging that he has been exposed to high levels of environmental tobacco smoke since being transferred to SCI-Dallas. (Doc. 24 ¶¶ 14-15; Varner Decl. ¶¶ 23-24; Doc. 25 ¶¶ 14-15). The parties dispute whether Grievance Number 690441 alleges that the named Defendants were involved in events of which Harvin complained. (Doc. 24 ¶ 16; Varner Decl. ¶ 25; Doc. 25 ¶ 16). The parties further dispute whether the averments of Grievance Number 690441 are specific enough to assert an allegation that Defendants violated Harvin's Eighth Amendment rights. (Doc. 24 ¶ 17; Varner Decl. ¶ 26; Doc. 25 ¶ 17).

The parties agree that Harvin fully exhausted Grievance Number 690441. (Doc. 24 ¶ 18; Varner Decl. ¶ 27; Doc. 25 ¶ 18).

C.    **Exhaustion of Administrative Review**

Defendants argue that Harvin failed to properly exhaust the claims against them by failing to set forth facts in the grievance to demonstrate that the named Defendants were personally involved in the events at issue. (Doc. 17, pp. 6-9). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth v. Churner, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." Id. at 73 (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *See Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of administrative remedies, but also substantial compliance with procedural requirements. *Id.* at 227- 32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). Failure to identify a named defendant on a grievance form, absent a "justifiable excuse," constitutes failure to properly exhaust as to that defendant. *Williams v. Pa. Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005) (non-precedential).

The DOC has an Inmate Grievance System, set forth in DC-ADM 804, which permits any inmate to seek review of problems that may arise during the course of confinement. *See* 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. An

appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

On August 7, 2017, Harvin filed grievance number 690441, alleging that he has been exposed to high levels of environmental tobacco smoke since being transferred to SCI-Dallas. (Doc. 17, p. 12; Doc. 24 ¶¶ 14-15; Varner Decl. ¶ 24 ). The grievance was denied at all levels of review. (Doc. 24 ¶ 14-18; Varner Decl. ¶ 24). Although Harvin pursued this grievance to final review, Defendants argue that he failed to clearly name the individual Defendants in the grievance, and thus procedurally defaulted his claims against them. (Doc. 17, pp. 7-9).

Grievance number 690441 states as follows:

the executive staff of the Pa DOC is just as liable as the management staff of SCI-Dallas for. 1) Oversee [sic] and operating a correctional facility that does not have in place the prerequisite safeguards that protects NON-SMOKING inmates from being overly exposed to extraordinarily high levels of "ETS". 2) Permitting the sale or use of smoking tobacco products in the DOC facility that provides absolutely no protection to NON-SMOKING inmates from the hazardousness of "ETS". 3) For inexplicably transferring and placing my future health at great risk, by authorizing my placement in a DOC facility (i.e. Dallas) that provides absolutely no protection to NON-SMOKING inmates from extremely high levels of "ETS" and significant risk to my future health.

(Doc. 17, p. 13). In the grievance, Harvin also stated that he submitted request slips to

7

Defendants Verbayla, Goyne, White, Demming, and Zakarauska complaining about his exposure to environmental tobacco smoke. (*Id.*).

In *Spruill*, the Court explained that the purpose of the DOC regulation related to exhaustion is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing. *Spruill*, 372 F.3d at 234. Under *Spruill*, it is the plaintiff's burden to explain why he did not name a defendant in the grievance. *See id.* Harvin submitted request slips to Defendants Verbayla, Goyne, White, Demming, and Zakarauska regarding his exposure to environmental tobacco smoke. (Doc. 19, pp. 13-18). As stated, in grievance number 690441, Harvin reported that he filed inmate request slips to each of these Defendants. (Doc. 19, p. 19). Additionally, in grievance number 690441, Harvin stated that he is seeking relief against Defendant Mahally. (*See id.*).

The Third Circuit Court of Appeals has held that all that is necessary to defeat a procedural default is that the prison is able, from the initial grievance, to "identif[y] the unidentified persons and acknowledg[e] that they were fairly within the compass of the prisoner's grievance." *Williams*, 482 F.3d at 640 (quoting *Spruill*, 372 F.3d at 234); *see also Robinson v. Johnson*, 343 F. App'x 778 (3d Cir. 2009) (reversing the grant of summary judgment and finding that even if Robinson had procedurally defaulted his claims against defendants by failing to identify them in his grievance, the prison's grievance process excused those procedural defaults); *Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir.

8

2011) (holding that summary judgment for the defendants was improper where the defendants had knowledge through the grievance process of an alleged ongoing practice of improper handling of the plaintiff's mail and the defendants failed to take corrective action).

The Court finds that Harvin's fully exhausted grievance more than adequately comports with the reasoning that "the primary purpose of the grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Williams*, 482 F.3d at 640 (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). Consequently, the Court will deny Defendants' motion based on failure to exhaust administrative remedies.

## III. Motion to Dismiss

### A. Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

### B. Discussion

#### 1. *Official Capacity Claims*

Defendants argue that any claims seeking monetary damages against them in their official capacities are barred by the Eleventh Amendment. (Doc. 17, pp. 3-4). Personal capacity suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). Official capacity suits, in contrast, generally represent an action against an entity of which the government official is an agent. *Id.*; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). When suits are brought against state officials in their official capacities, those lawsuits are treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, the doctrine of sovereign immunity, established by the Eleventh Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by citizens. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117

(1984); *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996); *Lavia v. Pennsylvania*, 224 F.3d 190, 195-96 (3d Cir. 2000). That immunity runs to state officials if they are sued in their official capacity and the state is the real party upon which liability is sought. *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974). Congress has not abrogated the immunity regarding Harvin's claims, nor has Pennsylvania waived this grant of immunity. *See* 42 Pa.C.S.A. § 8521(b). Consequently, Harvin's claims for money damages against the Defendants in their official capacities are barred by sovereign immunity and will be dismissed. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010).

### 2. *Personal Involvement*

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at

1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

A review of the complaint reveals that there are no substantive allegations against Defendant Mahally, and no allegations that Defendant Mahally was personally involved in the alleged wrongdoing. (*See* Doc. 1). It appears that Harvin attempts to hold Superintendent Mahally liable based on his supervisory role. However, it is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior. *See Rode*, 845 F.2d at 1207. Therefore, the Court will dismiss Harvin's Eighth Amendment claim against Defendant Mahally because he is not alleged to have sufficient personal involvement in the alleged wrongdoing, and liability "cannot be predicated solely on the operation of respondeat superior." *Evancho*, 423 F.3d at 353.

Moreover, it is well-established that inmates do not have a constitutional right to prison grievance procedures. *Lions v. Wetzel*, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. *See Rode*, 845 F.2d 1195, 1207 (3d Cir. 1998) (supervisory liability where a defendant, after

13

being informed of the violation through the filing of grievances, reports or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant has the necessary personal involvement); *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (not precedential) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (not precedential) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation). Thus, Harvin's attempt to establish liability against Superintendent Mahally based upon his denial of the grievance does not support a constitutional claim and this claim will be dismissed. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for liability).

With respect to Defendants Zakarauska, Demming, Verbyla, Goyne, and White, Harvin alleges that he submitted request slips to each Defendant complaining about his exposure to environmental tobacco smoke and the resultant bronchitis he developed. (Doc. 1, pp. 3-4; Doc. 19, pp. 13-18). Harvin further alleges that each Defendant ignored his complaints. (*Id.*). The Court finds that Harvin has sufficiently alleged that Defendants Zakarauska, Demming, Verbyla, Goyne, and White knew that he was exposed to excessive

environmental tobacco smoke and that these Defendants were aware that the environmental tobacco smoke posed an unreasonable risk of serious damage to Harvin's future health or caused Harvin a contemporaneous injury. Accordingly, the Court will deny Defendants' motion based on lack of personal involvement of Zakarauska, Demming, Verbyla, Goyne, and White.

### 3. *Equal Protection Claim*

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental. *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 423-24 (3d Cir. 2000).

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also*

*Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. *See Tillman*, 221 F.3d at 423.

Harvin seemingly asserts that Defendants violated his right to equal protection by failing to separate the non-smoking Plaintiff from smokers. (Doc. 1, p. 6). Harvin does not state that he is a member of a protected class. Indeed, prisoners are not a protected class of individuals. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class). Therefore, Harvin's claim survives only if he has properly stated a violation of his equal protection rights under a class-of-one theory. To survive under the class-of-one theory, Harvin must allege facts showing that he has been treated differently from similarly situated inmates, that the defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest. *Phillips*, 515 F.3d at 243. When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal. *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho*, 423 F.3d at 354-55); *see also Twombly*, 550 U.S. at 561 (requiring more than a "wholly conclusory statement of claim" to survive a motion to dismiss). Instead, plaintiffs must

identify similarly situated individuals and allege "occasions or circumstances" of differential treatment. *Young*, 160 F. App'x at 266; *see also Twombly*, 550 U.S. at 563 (requiring a plaintiff to plead a set of facts consistent with legal allegations in complaint to survive dismissal).

In a conclusory fashion, Harvin alleges that Defendants violated his equal protection rights. (*See* Doc. 1, p. 6). Harvin identifies no other inmates who were similarly situated to him that were treated differently by Defendants. The allegations in the complaint are simply "bald assertions" that do not allege "occasions and circumstances" of differential treatment. *Young*, 160 F. App'x at 266. Because Harvin has not stated the existence of similarly situated individuals sufficient to support a class-of-one claim, the equal protection claim will be dismissed.

### C.  Leave to Amend

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). In the matter *sub*

*judice*, several of Harvin's claims are factually and legally flawed and thus incurable; as such, the Court will dismiss those claims—the claim for monetary relief against Defendants in their official capacities, the Eighth Amendment claim against Defendant Mahally, and the Equal Protection claim—without leave to amend.

## IV. Conclusion

Based on the foregoing, Defendants' motion will be granted in part and denied in part. A separate Order shall issue.

Dated: March 7th, 2019

Robert D. Mariani
United States District Judge