IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN HARVIN, | : Civil No. 3:17-cv-2254 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| DEPUTY SUPT. ZAKARAUSKA, et al., | : |
| Defendants | : |

## MEMORANDUM

Plaintiff, Lauren Harvin ("Harvin"), an inmate housed at the State Correctional Institution at Dallas, Pennsylvania ("SCI-Dallas"), filed the instant action pursuant to 42 U.S.C. § 1983 alleging that, in exposing him to secondhand tobacco smoke, Defendants violated his Eighth Amendment rights. (Doc. 1). The remaining Defendants are Deputy Superintendent Zakaruskas, Deputy Superintendent Demming, Unit Manager Verbyla, Major White, and Corrections Classification Program Manager Goyne. Presently before the Court is Defendants' motion (Doc. 38) for summary judgment pursuant to Federal Rule of Civil Procedure 56. Harvin failed to respond to the motion and the time for responding has now passed.[1] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons set forth below, the Court will grant the motion.

---

[1] Harvin was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Doc. 41) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

I.  **Statement of Undisputed Facts**[2]

Harvin filed a complaint in this action alleging he was exposed to secondhand smoke at SCI-Dallas. (Doc. 40 ¶ 1). On January 22, 2020, Harvin was deposed. (*Id.* ¶ 2).

Harvin stated that he spoke to another inmate regarding the Clean Air Act because he was having nightmares about getting cancer and having trouble breathing. (*Id.* ¶ 3). Harvin first testified that his breathing problems began six years before the deposition. (*Id.* ¶ 4). He then explained that his breathing problems began "[a] while ago. Years ago." (*Id.* ¶¶ 4, 5; Doc. 40-1, pp. 12-13).

Harvin began receiving breathing treatments in 2016 or 2017. (Doc. 40 ¶ 6). After an annual physical examination, the infirmary advised Harvin that he had bronchitis. (*Id.* ¶ 7). Until that time, he did not notice any breathing problems and "didn't even know that [he] had bronchitis." (*Id.*; Doc. 40-1, p. 14). Harvin's shortness of breath occurred at night. (Doc. 40 ¶ 8). He does not recall any medical care provider telling him that his bronchitis was due to exposure to cigarette smoke. (*Id.* ¶ 9).

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from Defendants' Rule 56.1 statement of material facts. (Doc. 40). Harvin did not file a response to Defendants' statement of material facts. The Court accordingly deems the facts set forth by Defendants to be undisputed. *See* LOCAL RULE OF COURT 56.1; *see also* Doc. 41 ¶ 2 (advising Harvin that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted).

Harvin received breathing treatments three times a day for a month and was prescribed medication for a 30-day period. (*Id.* ¶ 10; Doc. 40-1, pp. 29-31). His first treatment for his lungs was on August 4, 2017. (Doc. 40 ¶ 11). Harvin stated that he suffered from wheezing, and sometimes a cough, mostly at night when he was lying down. (*Id.* ¶ 12). In September 2017, Harvin returned to the infirmary and reported breathing problems. (*Id.* ¶ 13). In October 2017, he had a sinus infection, stuffy nose, cough, chills, and a headache. (*Id.* ¶ 14).

Harvin admitted that Department of Corrections ("DOC") stopped selling cigarettes, that he never had a cellmate who smoked, and that no one currently smoked near him. (*Id.* ¶ 15). He acknowledged that the ban on smoking and cigarette sales occurred in July 2019. (*Id.* ¶ 20). Harvin also admitted that the amount of smoking at the facility has significantly reduced. (*Id.* ¶ 16).

From August 2017 until the deposition in January 2020, Harvin had not returned to the infirmary. (*Id.* ¶ 17). He stated that the pills and breathing treatments stopped at the same time. (*Id.* ¶ 18). At the time of his deposition, Harvin was still being treated for his sinuses. (*Id.* ¶ 19).

Harvin admitted that he sued the Superintendent based on his position. (*Id.* ¶ 21). He sued Deputy Superintendent Demming because he wrote to him about the smoking. (*Id.* ¶ 22). Harvin sued Defendant Varbyla because he told her about the smoking, and she advised him to tell a guard if he saw others smoking; Harvin concedes that he failed to do

so. (*Id.* ¶ 23). He sued Defendant Goyne because he was part of the administration, and he sued Defendant White because he wrote a Request Slip to her. (*Id.* ¶¶ 24, 25). Harvin admitted that none of the Defendants told him they did not care about the smoking. (*Id.* ¶ 26).

Harvin acknowledged that inmates did not listen when he asked them not to smoke around him. (*Id.* ¶ 27).

Harvin does not have a medical opinion that his breathing complaints are related to exposure to secondhand smoke. (*Id.* ¶ 28).

## II.    Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of

the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III. Discussion

### A. Eighth Amendment Claim

The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quoting *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200 (1989)). A prisoner may bring an Eighth Amendment claim for exposure to levels of environmental tobacco smoke ("ETS") that pose an unreasonable risk of serious damage to the prisoner's future health. *Helling*, 509 U.S. at 35. An inmate alleging such a violation can base his claim on either a present or future injury, both types involving an objective and subjective element. In both instances, adoption of an anti-smoking policy "will bear heavily on the inquiry into deliberate indifference." *Helling*, 509 U.S. at 36.

#### 1. Present Injury

For a present injury case, a plaintiff must show: (1) a sufficiently serious medical need related to the ETS exposure, and (2) deliberate indifference by prison authorities. *See Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003).

Harvin has failed to demonstrate that he suffers a sufficiently serious medical need related to ETS exposure. During his January 22, 2020 deposition, Harvin testified that his breathing issues began approximately six years before the deposition. (Doc. 40-1, p. 12). He further testified that he began receiving breathing treatments in 2016 or 2017. (*Id.* at pp.

6

13-14). At that time, he was diagnosed with bronchitis. (*Id.*). Harvin first sought medical attention related to his lungs on August 4, 2017. (*Id.* at p. 18). He was prescribed mediation and breathing treatments. (*Id.* at pp. 30-31). In September 2017, Harvin again reported breathing problems. (*Id.* at p. 20). One month later, in October of 2017, Harvin suffered from a sinus infection, stuffy nose, cough, chills, and headache. (*Id.* at p. 21). There is no evidence that Harvin's condition was due to cigarette smoke exposure and Harvin did not receive any medical opinion that his breathing complaints were related to exposure to secondhand smoke. Moreover, from approximately August 2017, through the date of his deposition in January 2020, Harvin has not visited the infirmary and has not sought medical attention for his symptoms. (*Id.* at p. 28).

Harvin has failed to demonstrate a sufficiently serious medical need related to ETS exposure. *See Goode v. Nash*, 2007 WL 201007 (M.D. Pa. Jan. 23, 2007) (despite opportunity to develop a record, the plaintiff relied on only his only speculations that ETS exposure resulted in his nasal discomfort, coughing and other maladies), *aff'd*, 241 F. App'x 868 (3d Cir. 2007). Hence, the Defendants are entitled to an entry of summary judgment on the present injury claim.

2. Future Injury

For a future injury case, a plaintiff must show: "(1) that 'the risk of which [plaintiff] complains is not one that today's society chooses to tolerate,' and (2) deliberate indifference by prison authorities." *Spellman v. Sec'y Pennsylvania Dep't of Corr.*, 751 F. App'x 251,

253 (3d Cir. 2018) (quoting *Helling*, 509 U.S. at 36). To prove the objective element, the plaintiff must show that he himself is "being exposed to unreasonably high levels of ETS." *Helling*, 509 U.S. at 35. Among the factors to be considered in evaluating this element are the "seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS," as well as "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* at 36. To prove the subjective element, the plaintiff must demonstrate "deliberate indifference" on the defendants' part, taken "in light of the prison authorities' current attitudes and conduct." *Id.* Related to the subjective element, defendants may raise "arguments regarding the realities of prison administration." *Id.* at 37.

Harvin testified that inmates were freely and openly smoking, inmates did not listen when he asked them not to smoke around him, and he was advised to inform a guard if he saw another inmate smoking. (Doc. 40-1, pp. 34, 36-37). Although this indicates that some inmates freely smoked at SCI-Dallas, it does not demonstrate that Harvin was exposed to unreasonably high levels of ETS such that it created a risk so grave that it violated contemporary standards of decency. Further, there is no evidence of Harvin's actual exposure to ETS. Harvin testified that inmates smoked in the dayroom, but he has not submitted any evidence that smokers were housed on the same unit or block as him. In fact, Harvin never shared a cell with a smoker. Further, at the time of his deposition, Harvin admitted that no one smoked near him.

Pursuant to *Helling* and *Atkinson*, Harvin was required to present more than what his testimony offered. *Compare Helling*, 509 U.S. at 35 (holding that inmate, who bunked with cellmate who smoked five packs a day, was exposed to unreasonably high levels of ETS), and *Atkinson*, 316 F.3d at 264-65 (holding that inmate, who shared cell with two constant smokers for seven months, was exposed to unreasonably high levels of ETS), with *Richardson v. Spurlock*, 260 F.3d 495, 498 (5th Cir. 2001) (finding that sitting near smokers sometimes is not unreasonable exposure). "*Helling* did not read the Eighth Amendment as mandating smoke-free prisons. It is impossible to read any such *per se* rule into *Helling's* 'objective' element." *Scott v. District of Columbia*, 139 F.3d 940, 942 (D.C.Cir.1998); *see also Mills v. Clark*, 229 F.3d 1143, at *5 & n. 5 (4th Cir. 2000) (table) ("*Helling* does not guarantee plaintiff a smoke free environment").[3]

Harvin's failure to submit evidence showing that he was exposed to unreasonably high levels of ETS compels an entry of judgment in favor of the Defendants on the future injury claim.

### B.   Lack of Personal Involvement

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity

---

[3] Significantly, effective June 1, 2019, tobacco products are no longer available for purchase through the DOC facilities' commissaries and, effective July 1, 2019, all DOC facilities were converted to tobacco-free environments. (Doc. 40-5, p. 2).

secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

With respect to Deputy Superintendent Zakaruskas, Deputy Superintendent Demming, and Corrections Classification Program Manager Goyne, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207. Additionally, any attempt by Harvin to hold these

Defendants liable for the actions of their subordinates is essentially an assertion of *respondeat superior* liability which seeks to hold these Defendants liable based on their supervisory roles. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207.

Nor can Harvin impose liability on any of the Defendants based upon their roles in reviewing and responding to inmate requests and grievances. It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond, to a prisoner's grievance or complaint, is insufficient to establish personal involvement in the underlying unconstitutional conduct. *See Rode*, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). In accordance with the foregoing, any attempt by Harvin to establish liability against the Defendants based upon their responses to inmate requests and grievances

does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005).

## IV. Conclusion

The Court will grant Defendants' motion (Doc. 38) and enter judgment in their favor. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March 29, 2022